IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY WHEELER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-CV-964-NJR-RJD |
| | ) |
| SALVADORE GODINEZ, | ) |
| RICHARD HARRINGTON, | ) |
| KIMBERLY BUTLER, | ) |
| NATHANIEL BIRKNER, | ) |
| TRACY GRUBER-HARRINGTON, | ) |
| PHILLIP SHIELDS, WESTLEY SPILLER, | ) |
| JESSE REID, and MIKE ATCHISON, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Anthony Wheeler is a former inmate with the Illinois Department of Corrections ("IDOC"). He filed this *pro se* lawsuit on September 18, 2013, asserting constitutional claims and related state law tort claims arising out of his 28-day confinement at Menard Correctional Center ("Menard") (Doc. 1). Judge J. Phil Gilbert screened Wheeler's complaint pursuant to 28 U.S.C. § 1915A and permitted Wheeler to proceed on the following claims:

> **Count 1:** Eighth Amendment claim against all Defendants for unconstitutional conditions of confinement;
>
> **Count 2:** Equal Protection claim against Defendant Godinez for implementing a policy that resulted in the confiscation of Plaintiff's fan because he was transferred on a court writ, where other inmates housed in the segregation wing were allowed to have fans;
>
> **Count 3:** State law negligence claim against all Defendants;
>
> **Count 4:** State law claim for intentional infliction of mental and emotional injury against all Defendants;

> **Count 5:** State law claim for negligent supervision or training resulting in injury, against Defendants Godinez, Atchison, Richard Harrington, and Butler.

Defendants filed a motion for summary judgment on July 10, 2015 (Doc. 118). Wheeler filed a response in opposition to the motion (Doc. 121), to which Defendant filed a reply (Doc. 122). Before the motion was ruled on, this case was recently reassigned from Judge Gilbert and Magistrate Judge Philip Frazier to the undersigned and Magistrate Judge Reona Daly (Docs. 124, 129).

For the reasons explained below, Defendants' Motion for Summary Judgment is granted.

## BACKGROUND

Following convictions for armed robbery and aggravated robbery, Plaintiff Anthony Wheeler entered IDOC custody in early 2003.[1] Wheeler was transferred through several different IDOC prisons before arriving at Pinckneyville Correctional Center in November 2005 ("Pinckneyville") (Doc. 119-1, p. 5). After almost six years at Pinckneyville, Wheeler was transferred in June 2011 to Danville Correctional Center ("Danville") (*Id.*). Except for temporary transfers, Wheeler stayed at Danville through at least May 2015 (*Id.*). He was then released from IDOC custody and placed on mandatory supervised release (parole) on June 17, 2016.[2]

The incidents that give rise to this litigation occurred when Wheeler was temporarily transferred from Danville to Menard Correctional Center ("Menard") on a court writ from August 29, 2012, to September 26, 2012 (Doc. 119-1, pp. 5, 6). Wheeler was the plaintiff in

---

[1] Wheeler also served other prior periods of incarceration, but they are not relevant to this lawsuit.
[2] See IDOC Offender Search website,
https://www.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last accessed September 15, 2016).

another civil rights lawsuit that required him to be present at this district's courthouse in East St. Louis, Illinois (*Id.*). *See Wheeler v. Merchant*, Case No. 3:09-cv-00114-SCW (S.D. Ill.); *Wheeler v. Wexford Health Source Inc.*, Case No. 3:11-cv-00839-MJR-SCW (S.D. Ill.).

Wheeler arrived at Menard via an IDOC prisoner transport bus on the evening of August 29, 2012 (Doc. 119-1, p. 6). After getting off the bus, Wheeler and the other recent arrivals were escorted to the Menard prison chapel (*Id.*). The inmates were separated into groups and strip searched by teams of correctional officers (Doc. 119-1, p. 7). Wheeler stated at his deposition that there were extra correctional officers present (about ten to twenty in all) because Menard was on lockdown at the time (Doc. 119-1, p. 6). Defendant Sergeant Nathaniel Birkner oversaw the prisoner intake process in the chapel (*Id.*). After Wheeler was strip searched, Sergeant Birkner questioned Wheeler as to why he had been transferred (Doc. 119-1, p. 8). Wheeler responded that he was at Menard on a court writ so that he could be present at the federal courthouse in East St. Louis (*Id.*). After the encounter in the chapel, Sergeant Birkner and Wheeler had no further interactions with each other (Doc. 119-1, p. 14).

Following the initial intake and strip search, Correctional Officer Phillip Shields escorted Wheeler from the chapel to his newly assigned cell: number 742 in the "North 2 House" (Doc. 119-1, pp. 8, 9). It was a one-man cell in a segregation unit (Doc. 119-1, p. 17). The front of his cell consisted of open bars, and across from his gallery there was a wall with windows (*Id.*). Because he was transferred from Danville (a medium security prison) to a segregation unit at Menard (a maximum security prison), Wheeler found himself living under much harsher conditions than what he was accustomed to experiencing (*Id.*).

It was hot in the cell house (*Id.*). The unit did not have air conditioning, there was little ventilation, and Wheeler was not allowed to have a fan (Doc. 119-1, p. 13). He estimated

that temperatures in his cell reached as high as 120 degrees, but Wheeler admitted at his deposition that he was unsure of the actual temperatures (Doc. 119-1, p. 17). The Shift Reports for the North 2 Cell House, which were submitted by Defendants, indicate that the temperatures in the cell house were typically in the 70 to 80 degree range, but the temperatures did rise above 80 degrees on occasion; to be exact, the temperature went above 80 degrees during eleven of the approximately 90 shifts that Wheeler was at Menard (Docs. 191-4; 191-5; 191-6). The highest recorded temperature was 85 degrees (Doc. 119-4, p. 14).

Defendants further note that the cell house officers were required to open all screened windows, set out strategically placed fans on extremely hot days, and provide ice to the inmates (Doc. 119-3). Wheeler does not remember whether fans were ever placed at the end of his gallery, but he stated at his deposition that he did not receive ice twice a day (Doc. 119-1, p. 17). The Shift Reports indicate that when the temperature inside was over 80 degrees the fans were turned on (and checked by the correctional officers multiple times per day), and the inmates were given ice once a day (*see* Docs. 191-4, 191-5, 191-6).

Wheeler also asserts that other deprivations contributed to the unlawful conditions of confinement. He did not eat at the prison chow hall; all meals were delivered to his cell (Doc. 119-1, p. 9). Wheeler stated at his deposition that he was supposed to receive a shower once a week, but he believed he only received two showers during the 28 days he was at Menard (Doc. 119-1, p. 14). He also was denied yard time and access to the prison law library (Doc. 119-1, p. 13). Except for a visit to the Menard Health Care Unit and three visits to courthouse (on September 11th, 12th, and 14th), Wheeler spent all of his time in his cell (Doc. 1-3, p. 7). Additionally, lights were kept on in the cell house throughout the night, and it was constantly noisy (Doc. 119-2, p. 16).

Wheeler stated at his deposition that the conditions at Menard adversely affected his health, causing "migraine headaches, heat exhaustion and excessive perspiration and sleep deprivation" (Doc. 119-1, p. 18). Wheeler also admitted, however, that he has suffered from migraine headaches since 1999, and that the heat exhaustion, excessive perspiration, and sleep deprivation were self-diagnosed (*Id.*).

There are nine defendants in this action, with whom Wheeler had varying degrees of interaction. Defendant Salvador Godinez was the IDOC director while Wheeler was at Menard (Doc. 119-1, p. 12). Wheeler sent letters and grievances to Godinez, but he never received a response (*Id.*). Defendants Kim Butler, Mike Atchison, and Richard Harrington were wardens at Menard while Wheeler was at the facility (Doc. 119-1, pp. 12-14). Wheeler did not interact with them in person, but he did send them letters and request forms (*Id.*). He did not receive any responses (*Id.*).

Wheeler spoke face-to-face with the other defendants. As previously noted, Defendant Sergeant Birkner managed the intake procedures upon Wheeler's arrival to Menard (Doc. 119-1, p. 14). There were no further communications between the two after that date (*Id.*). The last four defendants, Tracy Gruber-Harrington, Jesse Reid, Phillip Shields, and Westley Spiller, were all correctional officers who worked in Wheeler's cell house (Doc. 119-1, pp. 13-18). Wheeler attempted to discuss the heat/fan problem, lack of yard time, lack of law library access, and other conditions of confinement issues with the four defendants as they walked the gallery, but his complaints went ignored (*Id.*).

Wheeler returned to Danville on September 26, 2012, and he filed administrative grievances on the conditions he experienced at Menard in early October 2012 (Doc. 1-3, p. 7). The IDOC Administrative Review Board denied Wheeler's grievances on August 1, 2013

(*Id.*). He then filed this lawsuit on September 18, 2013 (Doc. 1).

## DISCUSSION

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. A "material fact" is one identified by the substantive law as affecting the outcome of the suit. A "genuine issue" exists with respect to any such material fact . . . when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." On the other hand, where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do. In determining whether a genuine issue of material fact exists, we view the record in the light most favorable to the nonmoving party.

*Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681 (7th Cir. 2014) (citations omitted).

**A.** *Count 1 for Unconstitutional Conditions of Confinement*

Wheeler asserts in Count 1 of his complaint that the nine defendants violated his Eighth Amendment rights during his 28-day stay at Menard by depriving him of adequate ventilation/air circulation in the excessive heat, denying him adequate exercise and access to the law library, and interfering with his sleep.

"[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society," and so, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (internal quotations omitted). Indeed, "the Constitution . . . does not mandate comfortable prisons." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). While "[i]nmates cannot expect the amenities, conveniences and services of a good hotel . . . the society they once abused is obliged to provide constitutionally adequate confinement." *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir. 1988). Thus, prison officials violate the Eighth Amendment when "they are

deliberately indifferent to adverse conditions that deny 'the minimal civilized measure of life's necessities,' such as adequate food, clothing, shelter, recreation, and medical care." *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To succeed on a claim of deliberate indifference to a condition of confinement, a prisoner must show that a prison official knew of a prison condition that presented an objective, sufficiently serious risk of harm, yet disregarded that risk by failing to take reasonable measures to address it. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008).

Wheeler argues that the lack of ventilation, denial of yard/recreation time, denial of visits to the law library, loud noise, and bright lights in the gallery made his conditions of confinement unconstitutional. Although "some conditions, which taken singly do not constitute cruel or unusual punishment, may in cumulative effect violate the Eighth Amendment." *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997). In this instance, the Court agrees with Defendants that none of the conditions of confinement described by Wheeler during his 28-day stay at Menard, individually or collectively, amounts to a deprivation of the minimal civilized measure of life's necessities.

Extreme temperatures may violate the Eighth Amendment, depending on the severity and duration. *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997). The Supreme Court and the Seventh Circuit have not yet held, however, that prisoners are entitled to air conditioned cells. In this case, Wheeler was housed in a one-man cell with open bars. For nearly ninety percent of the time that Wheeler was at Menard, the temperature in the cell house did not rise above 80 degrees. When it did, fans were turned on, and the inmates received ice once a day. Wheeler asserts that the hot cell caused him headaches, heat

exhaustion, and excessive perspiration, but he admits that he has suffered from headaches for many years. The heat related illnesses were also self-diagnosed; no medical professional diagnosed him with heat exhaustion or excessive perspiration. While undoubtedly warm and uncomfortable, the conditions were not so hot as to be unconstitutional. *See, e.g., Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004) (citing cases and concluding that a ventilation system that allowed summer temperatures to average eighty-five or eighty-six degrees during the day and eighty degrees at night was not sufficiently extreme to violate the Eighth Amendment where such temperatures were expected and tolerated by the general public in Florida).

Intense and prolonged illumination in an inmate's cell also may violate the Eighth Amendment. *See, e.g., Horton v. Berge*, No. 02-C-0470-C, 2003 WL 23204657, at *4 (W.D. Wis. Mar. 12, 2003) (prisoner can state an Eighth Amendment claim of cruel and unusual treatment by alleging 24-hour, intense, and prolonged illumination sufficient that caused physical and emotional harm). Here, Wheeler claims in a conclusory fashion that the lighting was "on constantly" and there was "constant illumination" (Doc. 119-1, p. 16). He does not, however, provide any other details or facts regarding the intensity of the lighting (*see id.*). But other evidence reveals that the lights in Wheeler's cell could be turned off at night (Doc. 119-7). And the lights on the gallery were left on for safety reasons, but dimmed at night (*Id.*). As for the noise, a certain amount is to be expected when living in a cell house with over 500 other inmates (*see* Docs. 191-4, 191-5, 191-6). Wheeler claims the noise was "monstrously excessive," but again, he does not provide any further details or facts (Doc. 119-7, p. 16). Wheeler's vague and conclusory assertions about the lighting and the noise are not sufficient to create a genuine issue of material fact. Without something more, no

reasonable jury could conclude that the lighting or the noise amounted to a constitutional deprivation. *See Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010) ("We often call summary judgment the 'put up or shut up' moment in litigation, by which we mean that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case. And by evidence, we mean evidence on which a reasonable jury could rely." (internal citations omitted)); *Payne v. Pauley,* 337 F.3d 767, 772–73 (7th Cir. 2003) ("[T]he Federal Rules of Civil Procedure require the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.' Conclusory allegations, unsupported by specific facts, will not suffice." (quoting FED. R. CIV. P. 56(e))).

As for the showers, Wheeler could not "recall exactly" how many times he showered at Menard (Doc. 199-1, p. 10). When asked, "So you think you only had two showers the entire time you were at Menard Correctional Center?" he responded, "yes" (Doc. 119-1, p. 10). Wheeler did not testify or submit any other evidence that he was prevented from cleaning himself in other ways, such as using water from the sink to do so (Doc. 119-1, p. 10). He also did not testify or present any evidence that he suffered any physical harm from the lack of showers. Consequently, Wheeler has not set forth evidence sufficient to create a genuine issue of fact regarding the showers. *See Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988) (being deprived of toilet paper for five days; not provided with soap, toothpaste, or a toothbrush for 10 days; and kept in a filthy, roach-infested cell for 28 days does not violate the constitution, where the conditions were temporary and affected only one prisoner, and the affected inmate suffered no physical harm); *Lock v. Clark,* No. S90–327 (RDP), 1992 WL 559660, *9 (N.D. Ind. Mar. 17, 1992) (prisoner who, for seven days, was deprived of all personal property, including soap and hygienic items; was not permitted to

take a shower; was confined to a strip cell; was given only one and a half rolls of toilet paper; and was left to wear nothing but his undershorts was not denied "the minimal civilized measures of life's necessities").

With respect to Wheeler's recreation time, twenty-eight days without access to the outdoor yard is not ideal, but it is not a constitutional deprivation. *E.g., Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001) ("We think it a reasonable rule that a denial of yard privileges for no more than 90 days at a stretch is not cruel and unusual punishment.") The denial of access to the law library is also not a constitutional deprivation, particularly because Wheeler was represented by an attorney during the time he was at Menard. *See Wheeler v. Merchant*, Case No. 3:09-cv-00114-SCW (S.D. Ill.); *Wheeler v. Wexford Health Source Inc.*, Case No. 3:11-cv-00839-MJR-SCW (S.D. Ill.). Additionally, one must keep in mind that Wheeler was housed at Menard on a temporary transfer *and* the prison was on lockdown at the time. Because of his status as a temporary detainee and the already heightened security in the prison, one could expect that prisoner movements and nonessential activities would be kept to a minimum (*see* Doc. 119-7).

In sum, Wheeler has not set forth evidence or argument sufficient to establish a genuine issue of material fact that any one of the conditions he complained about, standing alone, constituted cruel or unusual punishment. The Court further concludes that he has not established a genuine issue of material fact that all of the conditions taken together violated the Eighth Amendment. The conditions of Wheeler's confinement at Menard might have been unpleasant, and certainly a change for Wheeler, but no reasonable jury could find that they fell below contemporary standards of decency or were sufficiently extreme to implicate the Eighth Amendment. Accordingly, Defendants are entitled to summary judgment on

Count 1. In light of this conclusion, the Court need not address Defendants' argument regarding qualified immunity (Doc. 119, p. 23).

**B.  *Count 2 for Equal Protection Violation***

Wheeler asserts in Count 2 that his equal protection rights were violated because Defendant Godinez implemented a policy that prohibited him from bringing a fan with him to Menard, despite the fact that other inmates housed in segregation were allowed to have fans. Equal protection claims typically arise in situations where the plaintiff is a member of a religious or racial minority. There are, of course, also "class of one" equal protection claims. The Seventh Circuit has held that "class-of-one claims can be brought based on allegations of the irrational or malicious application of law enforcement powers." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). To state such a claim, Wheeler must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. (quoting *Engquist v. Oregon Dep't. of Agriculture*, 553 U.S. 591, 601 (2008)).

Here, Wheeler's equal protection claim fails because Defendants have articulated a rational basis for the difference in treatment. Defendants admit that inmates temporarily transferred to Menard on a court writ are subject to a strict property policy (Doc. 119-7, p. 1). These inmates may only bring personal hygiene items, religious materials, legal documents, and other necessary paperwork (Doc. 119-7, p. 5). This restriction helps to prevent contraband from entering the facility, and it also ensures that the inmate's property will be readily available when he returns to his parent institution (*Id.*). Although Wheeler may think that the IDOC is punishing inmates on court writs by restricting property access, institutional security is a sound basis for the IDOC's policy decision. Wheeler thus fails to

establish the necessary elements of his equal protection claim, and Defendants are entitled to summary judgment on Count 2. In light of this conclusion, the Court need not address Defendants' argument regarding qualified immunity (Doc. 119, p. 24).

C. *Counts 3, 4, and 5 for Torts Under State Law*

Because Defendants are entitled to judgment as a matter of law as to the federal claims, the Court declines to exercise jurisdiction over Wheeler's related state law tort claims. *See* 28 U.S.C. § 1367(c)(3); *Contreras v. Suncast Corp.,* 237 F.3d 756, 766 (7th Cir. 2001) ("A decision to relinquish pendent jurisdiction before the federal claims have been tried is, as we have said, the norm, not the exception, and such a decision will be reversed only in extraordinary circumstances.") Consequently, the portion of Defendants' motion for summary judgment related to Plaintiff's state law claims is denied as moot.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 118) is **GRANTED in part and DENIED in part**. Summary judgment is **GRANTED** as to all Defendants on Counts 1 and 2, and those counts are **DISMISSED with prejudice**. The Court **DECLINES** to exercise supplemental jurisdiction over Counts 3, 4, and 5, and therefore summary judgment is **DENIED as moot** as to those claims, and they are **DISMISSED without prejudice.** The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff on Counts 1 and 2 and to close this case on the Court's docket.

IT IS SO ORDERED.

DATED:   September 26, 2016

*[signature]*

**NANCY J. ROSENSTENGEL**
**United States District Judge**